# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA J. ROGERS, | ) | CASE NO. 3:20-cv-00706-DAR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Amanda Rogers (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security[1] (Commissioner), denying her applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 et seq. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 11). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.    Procedural History

On April 17, 2017, Plaintiff filed her application for DIB, alleging a disability onset date of October 25, 2016. (R. 15, Transcript ("Tr.") 135, 399).[2] The application was denied initially

---

[1]  Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

[2]  Plaintiff previously filed a Title II application for a period of disability and disability insurance

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 285-303). Plaintiff participated in the hearing on December 19, 2018, was represented by counsel, and testified. (Tr. 185-222). A vocational expert ("VE") also participated and testified. *Id*. On February 27, 2019, the ALJ found Plaintiff not disabled. (Tr. 132). On February 11, 2020, the Appeals Council ("AC") denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 18, 20, 22).

Plaintiff asserts that "[t]he ALJ failed to affirmatively discharge his duty to rectify or provide a basis for a discrepancy between the vocational expert's testimony and the Dictionary of Occupational Titles." (R. 18, PageID# 1646).

## II.    Evidence

Plaintiff's assignment of error is limited to the VE's testimony at the hearing and the ALJ's reliance on that testimony. (R. 18, PageID# 1657). Therefore, the medical facts in this case are not in dispute. By way of background, the ALJ summarized Plaintiff's testimony at the hearing as follows:

> The claimant alleges, in the Adult Disability Report, that she is unable to work due to herniated disc, bursitis, fibromyalgia, osteoarthritis, sciatica, and because she walks with a cane. (Exhibit C2E/2) The claimant, who was 48 years old at the time of the hearing, testified that she has a 9th grade education, is 5'4" and weighs 135 pounds, and is right handed. She further testified that she resides with her husband, daughter, and two grandkids ages 9 and 7. She testified that she helps get her grandchildren on the bus and she makes their meals. She testified that she has a driver's license and can operate a vehicle short distances but she has anxiety while driving. She testified that she can read and write and has not obtained her GED.

_____

benefits on May 29, 2014, alleging a disability onset date of April 18, 2014. (Tr. 226). On February 2, 2016, the ALJ issued an unfavorable decision. (Tr. 223).

She testified that she stopped working as a bartender as she could not hold the bottles. During the hearing she appeared with a one point cane which she testified was prescribed by her doctor. She testified that she uses it in the house, to get groceries, and to stand for longer than a minute. As to her hands, she testified that they swell up and make it difficult for her to grip things. As to her TMJ, she testified that post surgery she continued to have symptoms whereby her mouth tightens up while sleeping and she has migraines. She reported that she gets migraines 2-4 times per week. She reported that she continues to take Tylenol 4 for pain. She testified that she has psoriasis on the bottom of her feet which is limited to her feet. As to her mental health, she testified that she is being treated for panic attacks and she is prescribed Lexapro and Klonopin. She testified that she can walk only a few steps without a cane, she can stand 10 seconds, she can lift/carry a bottle of juice or a jug of milk, she can use her hands to manipulate and grasp objects, she cannot bend, squat, or crawl, she can climb stairs with rails, and she can reach overhead. As to her activities of daily living, she testified that she goes to the grocery store with her daughter using a mobile cart, she does not cook much, and she spends most her day laying down. She testified that her medications make her sleepy and she naps during the day for an hour. (see hearing testimony).

(Tr. 143). Plaintiff focuses her statement of the facts on mental health treatment records. (R. 18, PageID# 1648). The Commissioner limits the discussion of the relevant facts to the VE's testimony at the hearing, which will be discussed below. (R. 20, PageID# 1668). Regarding Plaintiff's mental health, the ALJ stated:

Dr. Watkins, the psychiatric consultative examiner, opined that the claimant retains the capacity to understand, remember, and carry out concrete and fairly abstract instructions of at least simple or moderate complexity, she is able to manage her own affairs, she is able to adequately function in responding appropriately to supervision and to coworkers in a work setting, and she could probably cope with a mild to moderate work pressure work setting, given tasks that fell within her physical limitation. (Exhibit Cl6F) The undersigned finds the limitations suggested by Dr. Watkins persuasive as they are consistent with and are accounted for in the adopted residual functional capacity as they are consistent with the nature, scope, or findings from the treatment record more fully discussed above.

(Tr. 153-54).

## III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes

disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.     Summary of the ALJ's Decision

The ALJ made the following conclusions:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2.  The claimant has not engaged in substantial gainful activity since October 25, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: degenerative disc disease; sciatica; degenerative joint disease of the knees; depressive disorder; anxiety disorder; bilateral trochanteric bursitis; TMJ disorder/osteoarthritis status post right TMJ surgery; positive bilateral hands Tinel sign; hypertrophic plantar psoriasis; mood disorder; and panic disorder (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: she can occasionally use right and left hand and foot controls. She can handle, finger and feel with both hands frequently. She requires a cane to ambulate. She can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, or crawl. In addition, she can never work around hazards, such as at unprotected heights, or around moving mechanical parts, can never operate a commercial motor vehicle, and can occasionally work in conditions of humidity and wetness, in extreme heat or cold, in conditions where there are concentrated vibrations, and in conditions where there is concentrated exposure to dust, odors, fumes, or other pulmonary irritants. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line or conveyor belt work; she is limited to simple work-related decisions, and she can respond appropriately to occasional interaction with supervisors and coworkers, but with no team or tandem work with coworkers, and no interaction with the general public. Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on ***, 1970 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 25, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 138-156).

## V.  Law and Analysis

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v.*

*Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.     Plaintiff's Assignments of Error**

Plaintiff asserts that the ALJ failed to "rectify or provide a basis for a discrepancy between the [VE's] testimony and the Dictionary of Occupational Titles" pursuant to Social Security Regulation 00-4p. (R. 18, PageID# 1657). SSR 00-4p requires an ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VEs…and the information in the Dictionary of Occupational Titles (DOT) including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), published by the Department of Labor, and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p 2000 SSR LEXIS 8.

The Commissioner contends that Plaintiff waived any argument regarding the VE's testimony by declining to cross-examine the VE during the administrative hearing and not objecting to the VE's testimony at the hearing. (R. 20, PageID# 1673). In addition, the Commissioner argues that the ALJ satisfied the requirements of SSR 00-4p by asking the VE if

his testimony was consistent with the DOT and his knowledge and experience as a vocational rehabilitation counselor. (R. 20, PageID# 1673).

### 1.      The VE's Testimony at the Hearing

The VE attended the hearing and testified that he was familiar with the Social Security Administration's skill and exertional categories and definitions. (Tr. 211). He further testified that he understood that "if you give us an opinion which conflicts with the information in the DOT you need to advise us of the conflict and the basis for your opinion." *(Id.)* Plaintiff's counsel stipulated to the VE's qualifications and presence at the hearing. (Tr. 212).

The VE testified that he had reviewed the portions of the record related to Plaintiff's employment history, and he witnessed her hearing testimony. (Tr. 211-12). Moreover, the VE also reviewed a prior binding ALJ decision, which identified Plaintiff's past relevant work as bartender, certified nursing assistant, state tested nursing assistant, and cashier. (Tr. 195; 234). According to the prior decision, Plaintiff was unable to perform her past relevant work. (Tr. 234). The ALJ in the prior decision, however, determined that Plaintiff could perform other available work as a cashier, information clerk, and interviewer. (Tr. 235-36). The VE in the present action testified that those jobs were categorized at the light level of exertion. (Tr. 212).

Also during the administrative hearing, the ALJ questioned the VE to assess whether a hypothetical person with Plaintiff's functional limitations could perform available work in the national economy. The first hypothetical posed by the ALJ concerned an individual with the same age, education, and past work as Plaintiff, who could perform light work, except that she can occasionally use right and left hand and foot controls; "can handle, finger and feel with both hands frequently; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds;

occasionally balance, stoop, kneel, crouch or crawl; never work around hazards such as at unprotected heights or around moving mechanical parts, never operate a commercial motor vehicle, occasionally work in conditions of humidity and wetness, extreme heat or cold; conditions where there are concentrated vibrations and in conditions where there is concentrated exposure to dust, odors, fumes or other pulmonary irritants." (Tr. 213-14). The hypothetical further "limited to performing simple, routine and repetitive tasks, but not at a production rate pace[;]" "limited to simple/work-related decisions; can respond appropriately to occasional interaction with supervisors, co-workers and the general public and limited to tolerating few changes in the work setting defined as routine job duties that remain static and are performed in a stable, predictable work setting[;]" along with "[a]ny necessary changes need to occur infrequently and be adequately and easily explained." (Tr. 214).

The VE testified that such an individual could not perform the three jobs identified in the prior decision: cashier, information clerk and interview. (Tr. 215). However, the VE testified that the individual could perform positions in the light/unskilled category such as office clerk, custodian, and laborer as set forth in the DOT. (*Id.*).

The ALJ further modified the hypothetical by limiting the hypothetical individual to no kneeling, crouching, and crawling. (Tr. 215). The VE responded that such a person could perform the same jobs that the VE had identified. (Tr. 216). If the individual could never be exposed to environmental factors, the VE testified that the individual could still perform the office clerk position, but not the laborer and custodian positions. (Tr. 216). The VE testified that if social interactions were limited to no team or tandem work with co-workers and no interaction with the general public the number of applicable office clerk jobs would be reduced and the individual could not perform the custodian or laborer jobs. (Tr. 217). If the individual needed a cane to

ambulate, the VE testified the individual could not perform the custodial and laborer jobs but could perform the office worker job. (Tr. 217-18).

The ALJ then reduced the exertion level of the first hypothetical to sedentary, and the VE testified that there would be unskilled positions such as office clerks, order clerks, and surveillance system monitors. (Tr. 218). The VE testified that the office clerks position, DOT code 249-587-018, sedentary and SVP: 2, yielded 200,000 jobs in the national economy. (Tr. 219). The VE also identified the job of order clerks DOT code 209-567-014 with 19,000 such jobs in the national economy, and surveillance system monitors, DOT code 379.367-010, with 17,000 jobs in the country. *Id.* In addition, the VE testified to further modifications of the first hypothetical, stating that the individual could perform the same three jobs if kneeling, crouching and crawling were reduced to never; or if restricted from any environmental factors; or if social interaction was limited to no team or tandem work with co-workers and no interaction with the general public; or if they needed a cane to balance and to ambulate. (Tr. 219).

The VE testified that typically it is work preclusive if an individual misses 2.5 days a month or more in a combination of being tardy, leaving early, or missing the whole day. (Tr. 220). Further, the VE testified that it is work preclusive if the individual cannot stay on task for at least 90% of the time, excluding breaks or the lunch period. (*Id.*).

In response to the ALJ's questioning, the VE testified that his testimony was consistent with the information found in the DOT and the companion publication SCO, "but there's a lot of these restrictions that aren't in the DOT, oh, like the off task, the attendance, the social limitations and the way they were defined, the use of a cane and there may be some others that I'm not mentioning, but all that information is based on my personal knowledge and experience as a vocational rehabilitation counselor. (Tr. 220-21).

The ALJ afforded Plaintiff and her counsel an opportunity to ask questions of the VE, but counsel declined. (Tr. 221).

### 1.    The Alleged Conflict

Plaintiff asserts that "[t]he conflict between the VE's testimony and the DOT arose from the RFC's limitation of an individual to have the ability to **only** make 'simple-work related decisions.'" (R. 22, PageID# 1689) (emphasis added). According to Plaintiff's RFC, she "was capable of performing work at the sedentary exertional level with social limitations requiring no more than simple, routine and repetitive tasks, with only simple-work related decisions and occasional interaction with supervisors and co-workers, but no team/tandem work or any interaction with the general public." (R. 18, PageID# 1657). She contends that this conflicts with a job requiring a Level 3 reasoning development, such as those identified by the VE.

Regarding reasoning skills, the DOT assigns each job a General Educational Development score. The GED score sets forth the necessary education (informal and formal) required for satisfactory job performance. Dictionary of Occupational Titles, Appendix C, 4th Ed., rev. 1991 (available at https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (last visited September 22, 2021); s*ee also* DOT App. C - Components of the Definition Trailer, 1991 WL 688702. The GED scale is composed of three divisions—reasoning development, mathematical development, and language development. *Id*. Level 3 reasoning development requires one to "apply commonsense understanding to carry out instructions furnished in written, oral and diagrammatic forms and deal with problems involving several concrete variables in or from standardized situations." *Id.*

Pursuant to SSR 00-4p, 2000 WL 1898704, when a VE "provides evidence about the

11

requirements of a job or occupation," the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE … evidence and information provided in the DOT." First, the ALJ must ask the VE "if the evidence he or she has provided conflicts" with the DOT. *Id*. Second, if the VE's evidence "appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." *Id*.

Plaintiff asserts that "[n]one of the testimony offered or elicited pertaining to a conflict between the jobs cited by the VE and the DOT provided an explanation or basis for how an individual with Ms. Rogers' limitations as set forth in the RFC could actually perform jobs requiring a 03 reasoning level." (R. 18, PageID# 1662). Therefore, Plaintiff argues, the ALJ failed to comport with SSR 00-4p. (R. 18, PageID# 1660).

### 2.    Compliance and Waiver

The Commissioner argues that the ALJ complied with SSR 00-4p and that Plaintiff waived any argument regarding the VE's testimony by affirmatively declining to cross-examine the VE at the hearing or otherwise object to the testimony. (R. 20, PageID# 1673).

In the present case, the ALJ satisfied the "affirmative responsibility to ask the VE about any possible conflict" at the hearing when she specifically asked the VE if his "testimony was consistent with the DOT and the SCO[.]" (Tr. 220-221). The VE explained that it was consistent, but there were further restrictions that were not listed in the DOT, and therefore based upon his personal knowledge and experience as a vocational rehabilitation counselor. (Tr. 222-21).

The ALJ addressed her reliance on the VE's testimony as follows:

> To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational

expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

1. Office Clerk (DOT 249.587-018, SVP2, sedentary) 200,000 jobs available in the national economy
2. Order Clerk (DOT 209.567-014, SVP2, sedentary) 19,000 jobs available in the national economy
3. Surveillance System Monitor (DOT 379.367-010, SVP2, sedentary) 17,000 jobs available in the national economy

The vocational expert testified that the topic of social limitations and use of a cane is not specifically addressed in the Dictionary of Occupational Titles, and this portion of his opinion is based on his education, experience, and training. (Exhibit C12E)[.] Otherwise, pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(Tr. 155).

Plaintiff's argument here is that the ALJ should have inquired *further* regarding the consistency and accuracy of the VE's testimony. (R. 18, PageID#1662). However, an ALJ is "under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p." *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 168 (6th Cir. 2009) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)); *see also Martin v. Comm'r of Soc. Sec.,* No. 04-4551, 2006 WL 509393, at *5 (6th Cir. Mar. 1, 2006) (ALJ does not have duty to conduct independent investigation into VE's testimony); *Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394, at *12-*13 (N.D. Ohio June 8, 2017), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017) (quoting *Beinlich*). Rather, Plaintiff and her counsel——"who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT"—are obligated to investigate the VE's testimony. *Beinlich*, 345 Fed. App'x at 168 (citing *Ledford v. Astrue*, No. 07-4234, 2008 WL 5351015, at *10 (6th Cir. Dec. 19, 2008)); *Parrish*, 2017 WL 2728394, at *12.

The opportunity to address an inconsistency between a VE's testimony and occupational references is at the hearing. The Sixth Circuit has explained as follows:

> Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p when he asked the VE whether there was "any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Id.* This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief. *See Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008). The plaintiff's first argument is without merit.

*Beinlich*, 345 Fed. App'x at 168-69; *accord Leach v. Comm'r of Soc. Sec.*, No. 13cv14095, 2014 WL 4794167 at *8 (E.D. Mich. Sept. 25, 2014) ("where the ALJ specifically asked the VE if her testimony comported with the DOT, and the VE responded in the affirmative, that is all that is required"); *Norman v. Comm'r of Soc. Sec.*, No. 1:14cv2374, 2016 WL 922741 at *4 (N.D. Ohio Mar. 11, 2016) (Lioi, J.). "Plaintiff's arguments regarding the various flaws in the vocational expert's testimony are barred because plaintiff did not raise those issues at the hearing." *Corlew v. Comm'r of Soc. Sec.*, No. 12cv10004, 2013 WL 1190208 at *7 (E.D. Mich. Feb. 19, 2013), *report and recommendation adopted*, 2013 WL 1187515 (E.D. Mich. Mar. 22, 2013).

Plaintiff and her counsel attended the hearing and affirmatively declined the opportunity to cross-examine the VE regarding any alleged conflict. (Tr. 221). Because Plaintiff did not bring any alleged conflict between her RFC limitations and the Level 3 reasoning skills to the attention

of the ALJ, the ALJ could reasonably rely upon the VE's testimony and did not need to inquire further to identify an undisclosed conflict or explain how it was resolved.  *See, e.g.*, *Beinlich*, 345 Fed. App'x at 168; *Martin*, 2006 WL 509393, at *5; *Poll v. Berryhill*, No. 3:16CV2061, 2017 WL 3731988, at *8 (N.D. Ohio Aug. 30, 2017). The court finds no error.

## VI.     Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge


Date: September 23, 2021